UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AMANDA HOWLAND, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00442-JCN |
| | ) | |
| ELLEVET SCIENCES, INC., et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTIONS IN LIMINE

Plaintiff asserts claims against her former business and romantic partner and the company they operated. (Complaint, ECF No. 1.) In advance of trial, the parties filed nine motions in limine seeking to exclude certain evidence. (Motions, ECF Nos. 63–71.)[1] After consideration of the parties' written and oral arguments, the Court addresses the motions below.

### DISCUSSION

**A.    Negotiations and Offer of Alternative Employment Position**

Plaintiff seeks to exclude certain communications among her, Defendant Kjaer, and Michael Williams, one of the principals of Defendant ElleVet, which communications focused on Plaintiff's possible transition to a new role in the company. (Motion, ECF No. 63.) Plaintiff contends the communications were part of settlement negotiations and thus excludable under Federal Rule of Evidence 408. Rule 408 bars evidence of settlement

---

[1] At the hearing, Defendants withdrew one of the motions. (Motion, ECF No. 67.)

discussions to prove liability or to impeach a party through inconsistent statements.  Fed. R. Evid. 408.  The Rule provides:

> **(a) Prohibited Uses.**  Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > **(1)** furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > **(2)** conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> **(b) Exceptions.**  The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

*Id.*

Although the parties' lawyers exchanged emails in the months before the communications, a review of the motion record suggests that the communications could reasonably be viewed as discussions or negotiations regarding the company's management due to performance issues and potential future changes, including the sale of the business, rather than negotiations to settle legal claims.  Notably, the communications do not include any reference to the release or settlement of claims.  Further, even if the communications were considered to constitute settlement negotiations, the communications could be offered for a permissible purpose under Rule 408.

Because Plaintiff's arguments and the evidence of the communications (i.e., the documents reflecting the communications) do not establish that Rule 408 precludes admission, the Court denies the motion without prejudice to Plaintiff's ability to renew her

request if Plaintiff believes the evidence at trial demonstrates that the communications were part of settlement negotiations and, therefore, excludable under Rule 408.

## B.   Discriminatory Conduct of Other Employees

Defendants argue that evidence regarding alleged inappropriate conduct of two other employees of Defendant ElleVet should be excluded under Federal Rules of Evidence 401 and 403.  (Motion, ECF No. 64.)  Irrelevant evidence is generally inadmissible, and relevant evidence is generally admissible.  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. A court may also "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Although the alleged inappropriate conduct did not involve Plaintiff personally, because Plaintiff was evidently aware of the incidents and voiced her objection to the company's continued employment of the individuals and to the company's handling of the individuals' conduct and complaints from other employees, the incidents potentially have some relevance to Plaintiff's discrimination and retaliation claims.

The Court is not persuaded at this stage that limited exploration of the incidents would generate a significant risk of unfair prejudice to Defendants or of confusing or misleading the jury.  Because the balancing of relevance and potential prejudice could

3

differ based on the trial evidence, the Court denies the motion without prejudice to Plaintiff's ability to object at trial to the evidence as it is presented.

## C.    Plaintiff's Financial Resources

Plaintiff seeks to exclude evidence regarding: (1) the amount Plaintiff received in a prior settlement; (2) the value of Plaintiff's ownership interest in Defendant ElleVet and ownership-related income; (3) the profit made upon the sale of the home she owned with Defendant Kjaer; (4) Plaintiff's rejection of an alternate position with the company with income of $25,000 per month. (Motion, ECF No. 65.)

As a judge in this District noted, evidence regarding a defendant's wealth "is not inherently unlawful or inappropriate," but its relevance can be substantially outweighed by the risk of unfair prejudice "when it is being offered only to appeal to the jury's economic bias[.]"  *Burnett v. Ocean Properties, Ltd.*, No. 2:16-cv-00359-JAW, 2018 WL 5270221, at *2 (D. Me. Oct. 23, 2018) (quotations marks omitted).  Other courts have applied similar reasoning and excluded "evidence reflecting or concerning a [plaintiff's] personal financial status" when it "is irrelevant to the damages determination and is not probative of any of the issues in the case."  *Guillemard Ginorio v. Contreras*, No. CV 03-2317 (PG), 2007 WL 9712212, at *6 (D. P.R. Sept. 19, 2007).

The challenged evidence related to Plaintiff's wealth or income arguably has more relevance in this case than in some other cases.  When assessing Plaintiff's discrimination claims, a jury must determine whether Plaintiff was an employee of Defendant ElleVet. Plaintiff's ownership interest in the company and the way in which she was compensated would be relevant to that issue.  Further, as the Court noted at summary judgment, a

primary distinguishing factor between this case and other cases rejecting claims of intentional infliction of emotional distress (IIED) related to a romantic relationship is Plaintiff's assertion that, to enrich himself and leave her without financial stability, Defendant Kjaer engaged in verbal or emotional abuse in their personal relationship to assist in his alleged effort to control and remove Plaintiff from a business enterprise that Plaintiff conceived. (*See* Complaint ¶¶ 20, 67, 91–92, 116 (alleging loss of financial stability and security, huge financial problems, the intentional creation of financial exposure, and financial reliance on her job); Opposition to Motion for Summary Judgment at 6, 12, 17 (asserting motive of financial gain and impact of financial hardship)). Plaintiff also raises the circumstances of the sale of the home she owned with Defendant Kjaer as a basis for her IIED claim.

Because Plaintiff's ownership interest and income are relevant to her discrimination claims, and because Plaintiff has raised financial motive and financial hardship to support her IIED claim, based on the current record, the Court concludes that the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice. To the extent, therefore, that Plaintiff seeks the blanket exclusion of all information that might reflect her wealth, the Court denies the motion. The Court denies the motion without prejudice to Plaintiff's ability to object at trial to the introduction of specific financial information and to request a limiting instruction as to the purpose of the introduction of any such evidence.

5

**D.     Testimony of Amanda Levine, Esq., PI**

Plaintiff designated Amanda Levine, an attorney and a professional investigator, to testify regarding the workplace conduct that Plaintiff experienced while working at Defendant ElleVet.  Defendants contend that Ms. Levine should not be permitted to testify regarding: (1) implicit bias, (2) that women are more likely to experience harassment at work, (3) that Plaintiff was the victim of implicit bias, (4) that certain of Defendant Kjaer's actions were discriminatory, and (5) the assessment of Defendant Kjaer's credibility. (Motion, ECF No. 66.)

> Expert opinion testimony is permitted if it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  *Under Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999),

> courts consider the following nonexclusive factors to determine whether an expert's methodology is reliable: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of a particular scientific technique; and (4) whether the methodology has been generally accepted by the relevant scientific community

*United States v. Coleman*, 149 F.4th 1, 31 (1st Cir. 2025) (quotation marks and modifications omitted).

6

Plaintiff argues that the motion is untimely because Defendants filed it long after the deadline for filing *Daubert* motions. Although courts often set a different deadline for *Daubert* motions than for other evidentiary motions, the purpose of that approach is primarily to allow additional time for "a court to familiarize itself with complex areas of science or technical knowledge" and to convene a hearing to assess particularly complex issues. *Ratcliffe v. BRP U.S., Inc.*, No. 1:20-cv-00234-JAW, 2024 WL 4665597, at *5 (D. Me. Nov. 4, 2024). While some courts have denied *Daubert*/Rule 702 motions as untimely, *see Pharmacy Corporation of America v. Askari*, No. 21-2800, 2022 WL 3697342, at *5 (3d Cir. Aug. 26, 2022), courts in this District have considered the merits while noting that the moving party must accept a more cursory assessment and forfeits the right to a *Daubert* hearing, *see Ratcliffe*, 2024 WL 4665597, at *5. Even assuming the entirety of Defendants' motion should be considered a *Daubert* motion, the Court follows the District approach and will consider the merits.[2]

Determining whether to permit or limit questioning, arguments, and expert testimony regarding implicit or unconscious bias has proven to be challenging for courts. Generally, (1) some inquiry and argument from attorneys is permissible when a defendant is alleged to hold and act upon harmful stereotypes even if the defendant is not consciously aware that the defendant's views or motives represent such stereotypes, and (2) some expert testimony could conceivably be helpful in at least a subset of those cases. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 256 (1989) (plurality opinion) (discussing expert

---

[2] The same is true for the motion discussed below regarding Dr. Heller's testimony.

testimony about sex stereotypes while also noting that "[i]t takes no special training to discern sex stereotyping" in several of the comments and attitudes in the case); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 n.4 (1st Cir. 1999) ("just as a woman can ground an action on a claim that men discriminated against her because she did not meet stereotyped expectations of femininity, a man can ground a claim on evidence that other men discriminated against him because he did not meet stereotyped expectations of masculinity"); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 42 (1st Cir. 1999) (employment discrimination "extends both to employer acts based on conscious . . . animus and to employer decisions that are based on stereotyped thinking or other forms of less conscious bias").

Courts have been less receptive and more likely to exclude testimony purporting to identify very subtle implicit biases or associations that might be pervasive and difficult to control. The concerns supporting exclusion include an inadequate link between instinctive biases and the slow deliberative conduct ordinarily at issue in legal disputes, and an incompatibility with the individualized determinations and causation standards required by the anti-discrimination laws. *See e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011) (finding little probative value in expert opinions that potential biases across large systems played a meaningful role in individual employment decisions); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (3d Cir. 2017) (upholding exclusion of expert testimony regarding the Implicit Association Test); *Maciel v. Thomas J. Hastings Properties, Inc.*, No. CV 10-12167-JCB, 2012 WL 13047595, at *4–6 (D. Mass. Nov. 30, 2012) (finding psychologist qualified to explain implicit bias and implicit association test but excluding it

8

as unhelpful and potentially confusing); *Downing v. Abbott Laboratories*, No. 15 C 05921, 2019 WL 13398258, at *3 (N.D. Ill. Sept. 9, 2019) (excluding implicit association test expert testimony); Michael Selmi, *The Paradox of Implicit Bias and A Plea for A New Narrative*, 50 Ariz. St. L. J. 193, 222–27 (2018) (collecting cases excluding and permitting implicit bias expert testimony).

There is evidently no dispute that as an attorney and professional investigator with experience in investigating complaints of employment discrimination, Ms. Levine has the requisite experience to testify regarding the need to conduct, the adequacy of, and the substance of discrimination investigations. Defendants do not challenge her expert designation on that topic. *See also*, *Alibang v. Tesoro Hawaii Corp.*, No. CV 08-00130 PMP, 2009 WL 10677139, at *15 (D. Haw. June 15, 2009) (noting that expert testimony on the adequacy of investigation and methodologies following complaints of discrimination can be relevant to pretext inquiry).

Given Ms. Levine's training and experience in the investigation of claims of gender discrimination, her field of special knowledge conceivably extends to certain broad patterns that investigators are instructed to and in fact assess when conducting investigations. That is, a witness with Ms. Levine's experience and expertise would potentially have sufficient specialized knowledge to testify regarding: (1) the proposition that people can have not only conscious or explicit animus but also unconscious biases, and (2) the existence of certain relevant and well established conscious or unconscious gender stereotypes that have been legally recognized by courts or agencies as distinguished

9

from opinions that might require more specialized scientific expertise.[3]  Depending on the nature and extent of an expert's knowledge and experience, such testimony could potentially be helpful to a jury.

Defendants' concerns regarding Ms. Levine's qualifications and specialized knowledge to testify more extensively about unconscious bias and how it might impact Plaintiff's claims are valid.  Ms. Levine evidently lacks specialized training, experience, or research in sociology, psychology, or neuroscience that would permit her to establish either the existence of novel or contested unconscious stereotypes or biases (i.e., not yet well established in the legal context or still scientifically disputed) or to opine on the cognitive processes that might explain such biases.

Furthermore, even if Attorney Levine had the requisite qualifications and expertise to offer additional testimony on unconscious or implicit bias, the Court questions whether the testimony would be helpful to the jury and whether the probative value is substantially outweighed by the risk of juror confusion or improper reliance.  *See Daubert*, 509 U.S. at 595 (noting that more control is necessary under Rule 403 because expert evidence can be powerful and difficult to assess); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 48–49 (1st Cir.

---

[3] *See e.g.*, *Hopkins*, 490 U.S. at 234–35, 256 (suggesting that it likely did not require the specialization of a psychologist to recognize gender stereotypes when a female employee was judged negatively for the same "aggressive" conduct like "tough talking" and profanity that would not have been a problem for a male employee); *Joll v. Valparaiso Community Schools*, 953 F.3d 923, 931 (7th Cir. 2020) ("a jury could draw on its experience to conclude that the same behavior may be labeled 'assertive' in a man and 'aggressive' in a woman.  In other words, a reasonable jury could conclude that [the plaintiff] was being penalized for transgressing the age-old stereotype that women are or ought to be submissive"); *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 355 (3d Cir. 1999) ("an employer may act on gender-based stereotypes, firing women it perceives as not feminine enough (or as too feminine), or discharging women who are too aggressive while not doing the same to male employees").

2009) (endorsing district court's reasoning that academic sociologist with expertise in sex-based stereotypes in the workplace might have been qualified to opine on such topics but excluding expert testimony because it would not be helpful to the jury); *Dillard v. Smith*, 558 F. Supp. 3d 308, 315 (W.D. Va. 2021) (noting that expert testimony is of no assistance to a jury if it is within the knowledge of the jurors and when it offers nothing more than what lawyers can argue); *Meyer v. Ten Mile Island Condominium Association*, No. 1:22-CV-02042-SKC-KAS, 2024 WL 1932891, at *3 (D. Colo. May 2, 2024) (excluding under Rule 403 evidence of administrative investigator's assessment of the case because of the risk that jury would improperly defer to investigator's determinations); *Nelson v. Pace Suburban*, No. 17 C 7697, 2022 WL 1401529, at *3 (N.D. Ill. Mar. 21, 2022) (permitting general explanations of implicit bias and stereotyping but not more specific opinions about the defendant workplace that would require an empirical analysis beyond the expertise of the witness); *Randall v. Smith's Food & Drug Centers, Inc.*, No. 05-CV-139-J, 2006 WL 8433319, at *2 (D. Wyo. Mar. 22, 2006) ("Dr. Connolly's opinions are not the sort of conclusions for which expert testimony is needed").

Ms. Levine's  proffered opinion that women are more likely to experience harassment at work, which opinion is apparently informed by statistical evidence in studies she has read, presents similar and additional concerns.  As noted above, Ms. Levine evidently has not conducted any of the studies nor has specialized training or research experience in one of the fields of research.  The witness's familiarity with certain statistics or studies from having read them in connection with discrimination investigations is not enough.  *See, e.g., United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) (the witness's

11

"skill, experience, training and education as a lawyer did not make him any more qualified to testify as an expert on handwriting analysis than a lay person who read the same articles"). Even if Ms. Levine had sufficient experience to opine based on the cases she has personally investigated, the opinion would have little, if any, relevance to the individualized assessment the jury must undertake. Such an opinion resembles a propensity argument that courts generally prohibit (i.e., because women are more likely to experience discrimination at work, Plaintiff is more likely to have experienced discrimination in this case).

Ms. Levine's opinions that Plaintiff was the victim of implicit bias and that some of Defendant Kjaer's acts and words were discriminatory present the same concern. "While an expert's opinion is not objectionable just because it embraces an ultimate issue, the First Circuit has cautioned that expert testimony on questions of law is rarely admissible" because it ordinarily will not be of sufficient assistance to the jury. *United States v. Sirois*, No. 1:21-cr-00175-LEW, 2025 WL 3126744, at *4 (D. Me. Nov. 7, 2025) (citing Fed. R. Evid. 704(a)) (quotation marks omitted). The proposed testimony would not appear to assist the jury in understanding issues that are relevant to its analysis; the testimony risks intruding into the fundamental role of the jury. *See United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) ("This prohibition of opinion testimony on an ultimate issue of law recognizes that, when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's") (cleaned up) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

12

For similar reasons, Ms. Levine's testimony regarding Defendant Kjaer's credibility or the factors she considers when assessing credibility must be excluded as it would not be particularly helpful to the jury and would risk misleading the jury and interfering with the Court's instructions regarding credibility. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, No. 14-MD-2542 (VSB), 2025 WL 354671, at \*2 (S.D.N.Y. Jan. 30, 2025) ("Expert testimony must not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it") (quotation marks omitted); *Mueller v. Daugherty Systems, Inc.*, No. 1:18-CV-3358-MLB, 2021 WL 3754582, at \*9 (N.D. Ga. June 14, 2021) ("Expert testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations") (cleaned up).

In sum, the Court grants in part the motion with the exact scope of Ms. Levine's testimony to be determined at trial in accordance with the principles discussed above.

## E.    Testimony of Charles Heller, Ph.D

Defendants assert that Dr. Heller's proposed testimony involving the words "domestic violence," "intimate partner violence," and a "domestic violence assessment," should be excluded under Federal Rules of Evidence 402 and 403 as irrelevant and unfairly prejudicial because in the mind of a layperson, the term "violence" implies physical abuse which was not present here. (Motion, ECF No. 68.)  Plaintiff evidently does not dispute that the word "violence" has traditionally referred to intentional conduct involving physical force or the threat of physical force. *Violence*, Black's Law Dictionary (12th ed. 2024) ("The use of physical force, usually accompanied by fury, vehemence, or outrage;

13

especially, physical force unlawfully exercised with the intent to harm"). Plaintiff contends, however, that Dr. Heller should be permitted to use the term because, as an expert in the field, Dr. Heller considers the emotional abuse alleged here to be a form of domestic violence.

Dr. Heller's view is supported by others, including the American Psychiatric Association, which defines domestic violence or intimate partner violence as "physical, sexual, or psychological harm inflicted by a current or former partner or spouse," including not only physical force, sexual acts without consent, and stalking, but also "psychological aggression," meaning "verbal and non-verbal behaviors intended to harm emotionally or exert control." *Domestic Violence*, American Psychological Association, https://www.psychiatry.org/patients-families/domestic-violence. The question for the Court is whether the broader definition has been sufficiently accepted in the legal context and in the minds of laypersons (i.e., jurors) to prevent unfair prejudice through misunderstanding or misleading labels.  Some courts have embraced the broader definition, *see, e.g.*, *United States v. Huong Thi Kim Ly*, 798 F. Supp. 2d 467, 480 (E.D.N.Y. 2011), while others have excluded testimony referencing violence or prohibited the use of such terms when there is no evidence of the use or threat of physical force, *see, e.g.*, *Ryan v. State*, 2025 WL 2528466, at *15 (Md. Ct. Spec. App. Sept. 3, 2025).

In the absence of more specific evidence regarding the acceptance of the broader definition in the mind of the public, the Court finds legislative and judicial use of the terms instructive when assessing the appropriate terms to use at trial.  A brief survey of relevant sources militates against use of the broader definition as most statutes and legal definitions

incorporate the traditional requirement of physical force, *see, e.g.*, *Zodhiates v. United States*, No. 14-CR-175-RJA, 2022 WL 3605957, at *7 (W.D.N.Y. Aug. 23, 2022) (summarizing weight of authority interpreting meaning of "domestic violence" within 18 U.S.C. § 1204(c)(2) as including physical and sexual abuse but not including purely emotional abuse), and they use other words, such as "abuse," to refer to other serious harms, like financial or emotional injury, *see, e.g.*, 19-A M.R.S. § 4102 (1)(C), (1)(F), (1)(G), (5); *Abuse*, Black's Law Dictionary (12th ed. 2024) ("To injure (a person) physically or mentally").

While Dr. Heller's possible reference to domestic violence and related terms generates concerns of unfair prejudice under Rule 403, at this stage, the Court cannot determine that in all instances, the prejudice to Defendant Kjaer of use of such terms substantially outweighs the probative value. When discussing his work, Dr. Keller could conceivably reference domestic violence in ways that do not generate Rule 403 concerns. The more Dr. Heller's reference to domestic violence is directed to Defendant Kjaer's conduct, however, the greater the potential for unfair prejudice. Because the Court cannot assess all potential uses of the term outside the context of the trial, the Court defers ruling on the issue and will decide the issue at trial.[4]

Defendants also argue that Dr. Heller should not be permitted to opine as to the way Plaintiff felt as the result of Defendants' conduct and whether her beliefs were reasonable,

---

[4] Prior to a ruling on the admissibility of any such testimony, the parties and witnesses shall not refer to Defendant Kjaer's conduct as domestic violence.

including whether Plaintiff reasonably believed that she was in imminent danger. When diagnosing a condition, a treatment provider often accepts the client's representations as accurate in the absence of any objective evidence to the contrary. As to Dr. Heller's assessment of Plaintiff's condition, therefore, the Court discerns no basis for exclusion. To the extent Defendants challenge the accuracy of the information from which Dr. Heller made his assessment, Defendants can address their concerns through cross-examination. Dr. Heller, however, may not testify as to the accuracy of Plaintiff's account or the reasonableness of Plaintiff's beliefs and response to Defendant Kjaer's alleged conduct.

## F.    Plaintiff's Prior Personnel Management

Plaintiff alleges that it would be unfairly prejudicial and would result in needless mini trials if Defendants could introduce evidence of Plaintiff's prior instances of poor personnel management. (Motion, ECF No. 69.) A central issue relevant to all Plaintiff's claims is Plaintiff's job performance leading to the "May Agreement," which is an essential aspect of the parties' relationship. The Court denies Plaintiff's request to exclude evidence of Plaintiff's job performance, including her performance in personnel management.

## G.    Testimony of Douglas Currier, Esq.

Defendants argue that the testimony of Attorney Currier regarding his assessment of Plaintiff's mental health condition is irrelevant under Rule 401, is improper lay opinion under Rule 701, and is unfairly prejudicial under Rule 403. (Motion, ECF No. 70.) Under Rule 701, lay witnesses can give an opinion that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge"

16

covered by the rules on expert testimony.  Fed. R. Evid. 701. Attorney Currier can testify as to his personal observations regarding Plaintiff's condition but does not have the requisite expertise to opine as to the likely cause or speculative outcome of Plaintiff's condition. *See Konferowicz v. Vermont Mutual Insurance Co.*, No. 3:20-CV-00380 (JAM), 2022 WL 1395934, at *2 (D. Conn. Apr. 18, 2022) (lay witnesses are "free to testify about what they saw and heard," including by "adjective or analogy," but were not permitted to opine or speculate "about what [another person] was thinking or intended"); *Frye v. CSX Transportation Inc.*, No. 2:14-CV-11996, 2018 WL 1193369, at *1 (E.D. Mich. Mar. 8, 2018) (holding that the lay witnesses "can testify to their firsthand observations" but are "not qualified to opine or speculate as to [another individual's] mental health history, suicidal intentions or thoughts, and prescriptions" because they were "not medical experts").

The Court, therefore, grants Defendant's motion in part to exclude Attorney Currier's testimony regarding Plaintiff's mental health condition.

## H.    Defendant Kjaer's Conduct

Defendants move pursuant to Rule 403 to exclude evidence that Defendant Kjaer engaged with prostitutes during his relationship with Plaintiff.  (Motion, ECF No. 71.) Plaintiff contends that Defendant Kjaer admitted to doing so around the time of their first breakup, and she evidently believes that he did so later as well.  Plaintiff argues that the evidence is relevant to her IIED claim.

As the Court discussed at summary judgment, Courts have consistently refused to allow IIED claims based on romantic infidelity and the emotional harm caused by that

17

betrayal. In this case, the Court permitted Plaintiff to proceed on the IIED claim based on the argument, which was supported by sufficient evidence, that some of Defendant Kjaer's actions in his personal relationship with Plaintiff were part of his effort to remove Plaintiff from the business they shared. Plaintiff has presented no evidence to suggest that this conduct was part of that effort. Even if the evidence had some limited probative value, the prejudice to Defendant Kjaer would far outweigh the probative value as there is a substantial risk that the evidence would invite the jury to judge a party "on an improper emotional basis." *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000). The Court grants Defendants' motion without prejudice to Plaintiff's ability to make further proffer at trial.

### CONCLUSION

For the reasons explained above, the Court grants in part the motions filed at ECF Nos. 66 (testimony of Amanda Levine) and 70 (testimony of Douglas Currier); grants in part, denies in part, and defers in part the motion filed at ECF No. 68 (testimony of Dr. Heller); grants the motion filed at ECF No. 71 (Defendant Kjaer's conduct); and denies the motions filed at ECF Nos. 63 (discussions regarding Plaintiff's role in the company), 64 (conduct of other employees), 65 (Plaintiff's financial resources), 69 (personnel management concerns).

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 22nd day of May, 2026.

18